UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO.08-75-KSF

VICTORIA BOYD                                                                                          PLAINTIFF

v.                                             **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Victoria Boyd, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income based on disability ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence and decided by the proper legal standards.

I.      **OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential evaluation process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)     If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of

>at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
>(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
>(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence or make credibility determinations. *See id.* Rather, the court must affirm

the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.     THE ADMINISTRATIVE DECISION

Boyd filed an application on May 12, 2002, which was denied initially, on reconsideration and in a hearing decision dated May 2, 2003. The decision became final when the Appeals Council denied her request for review and she did not pursue the claim further. She filed a second application on September 14, 2005, alleging disability beginning on June 15, 2005. The claim was denied initially on January 6, 2006, upon reconsideration May 10, 2006, and in a hearing decision dated August 23, 2007. At the time of the ALJ's decision, Boyd was 24 years old with an eleventh grade education. The ALJ's decision became final when the Appeals Council denied her request for reconsideration March 22, 2008. Boyd has exhausted her administrative remedies and filed a timely action with this court. The case is now ripe for review under 42 U.S.C. § 405(g).

The ALJ began his analysis at Step One by determining that Boyd has not engaged in substantial gainful activity since her alleged onset date. At Step Two, the ALJ found that Boyd suffered from obesity with low back strain, smoker's asthma and exertional shortness of breath, residual weakness/pain from surgery on her right knee, borderline IQ, learning disorders in reading and math, depression and anxiety. Continuing to Step Three, the ALJ determined that these impairments or combination of these impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments. At Step Four, the ALJ found that Boyd was unable to perform her past relevant work. At the fifth and final step, relying on testimony of the

Vocational Expert ("VE"), and taking into consideration Boyd's age, educational background, prior work experience and residual functional capacity ("RFC"), the ALJ found that Boyd was capable of making a successful adjustment to work existing in significant numbers in the national economy and on this basis denied her claim for SSI.

In making his determination that Boyd was not disabled, the ALJ found that Boyd has the RFC to perform light work. She must alternate sitting and standing every half hour and can stand or be on her feet for 4 hours total (with a break every half hour) and sit for 6 hours total (with a break every half hour) in an 8-hour day. The ALJ determined that Boyd cannot climb hills, slopes, or work on uneven terrain, and she cannot climb ladders or work at unprotected heights. She can only occasionally climb stairs, steps or ramps and can only occasionally bend, stoop, crouch, squat, kneel or crawl. She cannot operate mobile equipment or otherwise be exposed to jarring, jostling and no commercial driving. She can only occasionally operate foot (pedal) controlled equipment with her right lower extremity. She cannot be exposed to excessive air pollution, pulmonary irritants or allergens. She has borderline IQ with a full scale IQ of 74, verbal of 72 and a performance IQ of 80. She may be functionally illiterate and have less than marginal math abilities and best suited for work without significant contact with the general public or close work with co-workers.

In making this determination, the ALJ noted that because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, he must consider the factors set out in 20 CFR 404.152(c) and 416.92(c). After discussing these factors, the ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely

4

credible. In support of this finding, the ALJ cited the findings by the prior ALJ and the examining medical source statement of Phil Pack, psychologist, who diagnosed malingering, and the assessment of the state agency psychological expert. He also stated that the treatment records are minimal regarding any physical complaints and that Boyd continues to smoke and has failed to lose weight. Further, though Boyd claims she has counseled with the Mountain Comprehensive Care Center, records show only sporadic visits.

At the hearing, the VE testified that, given the factors set out in the ALJ's hypothetical, Boyd would be able to perform the requirements of representative occupations in 30% of the light and sedentary work levels. The VE testified that Boyd could perform work at the light level as a night watchman (700,000 nationally/7,500 regionally), machine tender (850,000/8,000) and grader/sorter (650,000/6,000) and work at the sedentary level as a bench worker (319,000/4,000), hand packer (508,000/4,500) and surveillance monitor (650,000/6,000).

### III.    ANALYSIS

On appeal, Boyd argues that the ALJ's decision was not based on substantial evidence and that the ALJ made an error of law. Boyd argues that the ALJ's references to the opinions of Dr. Jan Jacobson, the state agency consultant, were "conclusory in nature" and failed to comply with SSR 96-8P. Specifically, Boyd argues that the ALJ should have included a limitation for her ability to respond to supervisors in the RFC and that the hypothetical the ALJ posed to the VE should have incorporated Dr. Jacobson's opinion that she was moderately limited in "the ability to accept instructions and respond appropriately to criticism from supervisors." Because substantial evidence supports the ALJ's decision and the ALJ complied with the Regulations and Rulings, the court will affirm the decision of the Commissioner.

There is substantial evidence to support the ALJ's RFC finding and there is no evidence that he ignored Dr. Jacobson's opinions. To the contrary, the ALJ noted that he considered Dr. Jacobson's opinions along with the prior ALJ's decision and the report of Dr. Pack. Further, any potential error is harmless because the ALJ's hypothetical was consistent with the ALJ's RFC assessment and properly incorporated Dr. Jacobson's opinions. The ALJ's hypothetical asked the VE to assume Boyd was limited to "simple routine work without significant contact with the general public or close work with co-workers." Dr. Jacobson's records note that Boyd could tolerate co-workers and supervisors in a non-public setting. Given the limitation in the hypothetical that the work must be in a non-public setting, there was no need for the ALJ to include a limitation in the hypothetical that Boyd could not accept instructions and respond appropriately to supervisors.

### III. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #10] is **DENIED**;

(2) the Commissioner's motion for summary judgment [DE # 11] is **GRANTED**;

(3)  the decision of the Commissioner is **AFFIRMED** pursuant to sentence 4 of 42 U.S.C. § 405(g) as it was supported by substantial evidence and decided by the proper legal standards; and

(4) a judgment will be entered contemporaneously with this Opinion and Order.

This 26th day of January, 2009.



**Signed By:**
*Karl S. Forester* KSF
**United States Senior Judge**